O’BRIEN, J.,
dissenting.
I agree with the majority’s resolution of the preclusion arguments but see no need for the district court to consider the intergovernmental immunity argument, raised for the first time on appeal. This dispute is between Deane and Pitkin County. I would reverse with instructions to dismiss, leaving issues of Colorado law involving only Colorado citizens and entities to be resolved by a Colorado court. For that reason, I respectfully dissent.
The settlement reached in this quiet title action appears to be a good one. Disputed title to federal lands is resolved, the United States has consolidated its forest holdings in an area near Aspen, Colorado, where development pressure is intense, and potential land uses contrary to forest management goals have been largely eliminated. And the settlement was obtained at modest cost. Deane will have an access easement across forest lands and clear title to a small (2.24 acre) tract of land containing a cabin, which is permanently restricted to no more than 500 square feet. A nonconforming use in the forest near Aspen may be tolerable. In the face of all the good things wrought by the settlement, why does Pitkin County want to be a fly in the ointment? That is not entirely clear, but it claims the deal frustrates its master land use plan, interferes with its well-designed program of transferable development rights, and violates state law. But the violations, if they exist, seem piddling when compared to all the advantages the settlement offers. The United States and Deane are frustrated. That frustration seems to have been vented in this aspect of the quiet title action, cooked up to preempt Pitkin County from later taking action against Deane, which might depreciate his enjoyment of the settlement. If Pitkin County is correct in its assessment of Colorado law and is willing to press the issue to extreme limits it might be able to require Deane to remove the cabin once the settlement is complete and deeds are exchanged.
But Pitkin County did not seek to intervene in the quiet title suit. It has made no *816 attempt to prevent the settlement and exchange of deeds. It was asked its position with respect to the settlement and answered honestly. Because its answer was unsatisfactory to Deane, it was “invited” (under the threat of a preclusive order foreclosing its rights) to participate in the quiet title suit “for the sole purpose of raising the issue of whether the proposed global settlement of the parties and the real' property transfers described therein would constitute an unlawful evasion of [Colo.Rev.Stat. ANN. § 30-28-101].” (Appellant’s App. at 76.) Not wanting to be finessed out of its governmental prerogatives Pitkin County petitioned to be heard and attempted to litigate the nominal issue — whether Deane, abetted by the United States, was attempting to evade state law and local subdivision regulations. But as soon as Pitkin County joined the scrum the game plan changed. The federal government introduced a new argument — federal law precluded any subsequent enforcement of state subdivision statutes by Pitkin County to the extent such enforcement might render Deane’s bargain with the United States less desirable.
At bottom the federal government’s position (whether based on preclusion or its newly minted theory of intergovernmental immunity) is simply this — to promote an expeditious resolution of its settlement with Deane the United States can drape the mantle of sovereign immunity over Deane’s shoulders, preventing the fulsome application of Colorado law, whatever that might be. The federal government is not willing to await, let alone abide, a determination of Colorado law as it relates to Deane. Doing so might make this whole exercise moot.
The Attorney General has authority to settle litigation on terms advantageous to the United States and court oversight of his decisions is circumscribed, but not absent. See 28 U.S.C. §§ 516, 519 (providing plenary power to the Attorney General to settle litigation to which the federal government is a party); but cf. United States v. Carpenter, 526 F.3d 1237, 1242 (9th Cir.2008) (“[w]e think it alien to our concept of law to allow the chief legal officer of the country to violate its laws under the cover of settling litigation.”), cert. denied, — U.S. -, 129 S.Ct. 1612, 173 L.Ed.2d 1029 (2009); Executive Bus. Media, Inc. v. United States Dep’t of Defense, 3 F.3d 759, 762 (4th Cir.1993) (“The Attorney General’s authority to settle litigation for its government clients stops at the walls of illegality.”).
Pitkin County attempted to raise several arguments in the district court as to why the transfer was at least procedurally contrary to law. It was rebuffed by the federal government’s argument that the deal was not yet final and, since agency action had not been exhausted, Pitkin County could not be heard on those arguments. More about that later. More to the point is this; the Attorney General’s excuse for attempting to preclude Pitkin County from exercising its governmental prerogatives is illusory.
Deane and the United States do not need the imprimatur of the district court to settle the pending quiet title action. An exchange of quit claim deeds and stipulation for dismissal is not something with which the district court must, or even should, be concerned. Sometimes there is a need for federal courts to superintend enforcement of continuing obligations (not present here). Sometimes federal courts must decide if a settlement is in the public’s best interest (not so here). Sometimes a federal court must-deal with opponents of a settlement who seek to intervene in order to block or modify it (also not present here). Cf. San Juan County, Utah v. United States, 503 F.3d 1163, 1189 (10th Cir.2007) (en *817 banc) (noting “It has never been supposed that one party — whether an original party, a party that was joined later, or an intervenor — could preclude other parties from settling their own disputes and thereby withdrawing from litigation”) (quoting Local No. 93, Int’l Ass’n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501, 528-29, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986)).
Here the settling parties offer only the slimmest of reasons for judicial superintendence. They claim Pitkin County’s threats to enforce Colorado law will queer their deal and they need the assistance of the federal courts to thwart Pitkin County’s nefarious intentions.
But Pitkin County fully recognizes the supremacy of the federal government and it claims no right to interfere with the federal government’s transfer of this tract of land to Deane. It claims the right to regulate the use of the 2.24 acre tract according to state law only after it is transferred to Deane and only against De-ane.
At oral argument Deane’s sole position was that he would win on the merits. Moreover and importantly, in the written settlement agreement with the United States Deane assumes the risk of Pitkin County’s future actions. “Deane further stipulates and agrees that Deane and his successors and/or assigns accept fully and entirely the risk, if any, that the existing cabin on PARCEL A may be subject to a final order requiring modification or removal ... and Deane, on behalf of himself and his successors and/or assigns, hereby forever releases the United States from any and all liability or claims related to such risk or final order.” (Appellant’s App. at 40.) The agreement makes manifest what Pitkin County has been arguing — its quarrel is with Deane, not the United States, and the supremacy of federal interests is not at stake.
After Pitkin County was pressed into joining the fray the federal government argued the County was preempted by federal law from even attempting to enforce Colorado law against Deane. It claimed if the County was permitted to do so it would interfere with, possibly queer, its settlement. The federal government based its settlement authority on federal statutes. In response Pitkin County attempted to show the federal government did not comply with the requirements of the very statutes upon which it relied. The federal government objected to Pitkin County’s arguments, saying its objections were premature because the deal was not yet signed and agency action had not been exhausted. Good enough!
But at oral argument the panel questioned the jurisdiction of federal courts to consider these issues if the deal was not final. In response counsel for the federal government said the deal was done in substance; it had been reduced to writing and would be signed as soon as the district court approved — thus federal courts have jurisdiction. But when pressed about the terms of the agreement counsel said the written agreement did not represent the full measure of the settling parties’ agreement because Deane would back out unless (contrary to the terms of the written agreement) he had enforceable assurances that his cabin was safe from Pitkin County’s regulatory ambition. The malleable nature of the sometimes on, sometimes off written agreement and the parties conduct in general prompts three observations: First, duplicity reigns. Second, this dispute is between Deane and Pitkin County; the federal government’s complicity with Deane is just an expedient, but unprincipled, way of ending a title dispute that has been pending since 2000. Third, there are knotty jurisdictional problems that can be easily avoided by dismissal, leaving the true contending parties to state remedies.
*818 At oral argument counsel for the federal government said the district court, in effect, treated this matter as a declaratory judgment action (the court did not say so). If this is, in fact, a declaratory judgment action properly cognizable in federal court it should have been so pled, giving Pitkin County an opportunity to be heard on the issues, particularly as to whether a declaratory judgment action should proceed in federal court as an adjunct to a quiet title action between other parties. The parties have not suggested a state declaratory judgment action would not lie.
I would reverse and instruct the district court to dismiss, or at least abate, these proceedings to permit a Colorado court to decide the issues of Colorado law.